UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | |
|---|---|
| In Re: ) | BK No.: 14-09873 |
| CPC LABORATORIES, INC. ) | |
| ) | Chapter: 11 |
| ) | Honorable Pamela S. Hollis |
| ) | |
| Debtor(s) ) | |

**FINAL ORDER (I) PROVIDING ADEQUATE PROTECTION, (II) AUTHORIZING POSTPETITION FINANCING, (III) GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS, AND (IV) GRANTING RELATED RELIEF**

Upon consideration of the final hearing on the motion (the "Motion") of CPC Laboratories, Inc. (the "Debtor") for the entry of a final order pursuant to 11 U.S.C. §§ 361, 363, 364 and Fed. R. Bankr. P. 4001 authorizing it to (i) provide adequate protection; (ii) obtain postpetition financing subject to the terms and conditions set forth herein, (iii) grant security interests, other liens and superpriority claims (including claims, liens and security interests pursuant to 11 U.S.C. § 364(c) and (d), and (iv) grant related relief in connection with the foregoing, all as more fully set forth herein, the Court finding that no party has timely filed an objection to (a) to the existence, validity, or amount of the Prepetition Indebtedness (defined below) owing to Allied as of the Petition Date or (b) the extent, legality, validity, perfection or enforceability of the Prepetition Liens (defined below); the Debtor, Allied Affiliated Funding, L.P. ("Allied") (collectively the "Parties") along with the official committee of unsecured creditors (the "Committee"), other creditors having an interest in these proceedings, and the Office of the United States Trustee appearing by counsel and upon the proceedings held before this Court; due notice having been provided, and good and sufficient cause appearing therefor,

THE PARTIES REPRESENT TO THE COURT AND STIPULATE AS FOLLOWS:

A. On March 19, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is now operating its business and managing its properties as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. There is presently no pending request or motion for appointment of a trustee or examiner. The Office of the United States Trustee has appointed the Committee in this chapter 11 case (the "Chapter 11 Case").

B. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Chapter 11 Case and the Motion in this district is proper pursuant to 28 U.S.C. § 1408.

C. Pursuant to the Amended and Restated Factoring Agreement dated as of November 8, 2011, as amended, modified or supplemented (the "Factoring Agreement"), by and between the Debtor and Allied, and related notes, security agreements and documents (collectively, with the Factoring Agreement, the "Factoring Documents"), Allied advanced the Debtor 85% of its Accounts (as defined under the Uniform Commercial Code) and then purchased the Debtor's Accounts. The Debtor is subject to a repurchase obligation by which the Debtor would owe Allied monies for those Accounts that were not collected or for other reasons specified in the Factoring Agreement. The Factoring Documents included (i) a Promissory Note dated July 19, 2013, in the maximum aggregate principal amount of $500,000.00 and (ii) a Security Agreement dated July 19, 2013.

D. The Debtor's obligations to the Allied under the Factoring Documents were and are guaranteed by B. Alicia Campos ("Campos") and Yasar Samarah ("Samarah," and collectively with Campos, the "Guarantors").

E. As of the Petition Date Allied was owed $788,074.41, plus accrued interest, fees, costs and expenses under the Factoring Documents (all of the foregoing, the "Prepetition Indebtedness"); and (b) repayment of the Prepetition Indebtedness is secured by a first priority prepetition security interest in the Debtor's assets as set forth in the Security Agreement and the Factoring Agreement (the "Prepetition Liens"). For purposes of this Order, each of the terms "Postpetition Debt" (as hereinafter defined) and "Prepetition Indebtedness" shall include the principal of, and all interest, fees, expenses and other charges owing in respect of, such loans, indebtedness, or financial accommodations, including any reasonable attorneys', accountants' and financial advisors' fees that are chargeable or reimbursable under the relevant agreements relating to such loans or other indebtedness).

F. Allied having filed its secured proof of claim on March 21, 2014 ("Allied's Claim")(Claim No. 1) and no objection has been made to Allied's Claim as of this date.

G. On March 25, 2014, the Court entered an interim order granting the Debtor authority to obtain postpetition financing, providing Allied with adequate protection, security interests and certain other protections ("First Interim Financing Order"). [Docket No. 26.]

H. The Prepetition Liens constitute valid, binding, enforceable, and perfected first-priority liens subject only to liens described in or otherwise permitted by the Factoring Documents, and are not subject to avoidance or subordination (except insofar as such liens are subordinated to certain liens permitted by the Factoring Documents that are valid, binding, enforceable and in existence on the Petition Date in accordance with the provisions of this Order) pursuant to the Bankruptcy Code or applicable non-bankruptcy law. The Prepetition Indebtedness constitutes legal, valid and binding obligations of the Debtor, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from Bankruptcy Code section 362); that no offsets, defenses, or counterclaims to the Prepetition Indebtedness exist; and that no portion of the Prepetition Indebtedness is subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

I. All cash of the Debtor wherever located on the Petition Date represented either proceeds of loans from Allied to the Debtor or proceeds Allied's collateral. Pursuant to the Factoring Documents, Allied has a first, valid and perfected security interest in and lien on all cash of the Debtor and that these funds constitute "cash collateral" within the meaning of 11 U.S.C. § 363(a). Allied is not willing to consent to the Debtor's use of its cash collateral as defined in § 363(a) of the Bankruptcy Code ("Cash Collateral").

J. The Debtor needs to obtain further financing to pay the expenses set forth in the budget attached to this Order as Exhibit A (the "Budget") to minimize disruption to, and to avoid the termination of, its business operations.

K. No practical source of additional financing exists other than pursuant to this Order since (a) all of its cash constitutes collateral of Allied (b) Allied will not consent to the Debtor's use of the Cash Collateral; (c) the Debtor could not obtain approval to use any portion of the Allied's prepetition collateral ("Prepetition Collateral") or obtain a "priming" lien with respect to that Prepetition Collateral over Allied's objection; and (d) the Debtor's only present means of obtaining additional funding is from

additional sales of the Debtor's Accounts pursuant to the Factoring Documents provided by Allied.

L. Under the circumstances of this Chapter 11 Case, the terms and conditions of this Order are in the best interests of Debtor's estate and its creditors. The terms of this Order have been negotiated in good faith and at arm's length between the Debtor and Allied, and any credit extended and loans made to the Debtor by Allied under the terms of this Order are deemed to have been extended or made in good faith within the meaning of § 364(e) of the Bankruptcy Code.

M. The notice provided by the Debtor of the Motion, the final hearing on the Motion, the entry of the First Interim Financing Order and the interim orders dated May 14, 2014, May 20, 2014 and June 10, 2014 [Docket Nos. 26, 107, 110 and 125] and the entry of this Final Order satisfy the requirements of Fed. R. Bankr. P. 4001(b) and (c) and are otherwise sufficient and appropriate under the circumstances.

THEREFORE AFTER FURTHER CONSIDERATION OF THE MOTION, IT IS HEREBY ORDERED AND ADJUDGED THAT:

1. Assumption of Factoring Agreement and Sale of Accounts. The Debtor is authorized (a) to assume the Factoring Agreement and the Guaranties, which are attached as exhibits to the First Interim Financing Order and incorporated by this reference as if fully set forth herein, (b) pursuant to § 363(b) of the Bankruptcy Code, to sell its Accounts to Allied, free and clear of all liens, claims and encumbrances, in accordance with the Factoring Agreement; and (c) pursuant to § 364 of the Bankruptcy Code borrow from Allied on a secured basis upon the terms and conditions of the Factoring Agreement as modified by the terms of this Order ("Postpetition Debt"). Subject to all other terms and conditions of the Factoring Agreement and this Order, the Reserve shall be in the amounts set forth in the Factoring Documents.

2. Good Faith Purchaser. Allied is a "good faith" purchaser of the Accounts and any financing provided by Allied pursuant to this Order shall be entitled to the protections of § 363(e).

3. Postpetition Financing.

a. The Debtor shall not be permitted to use the Cash Collateral. The Debtor shall immediately turn over to Allied all Cash Collateral in its possession. For the purpose of this paragraph, postpetition advances made by Allied to fund budgeted expenses shall not constitute Cash Collateral.

b. Debtor shall not use Postpetition Debt in such a manner that Debtor's disbursements during any week for any line item set forth in the line item projections contained in the Budget exceed by more than five percent (5%) the projected amount for such line item without Allied's prior consent.

c. Pursuant to § 364(c)(1) of the Bankruptcy Code, the Postpetition Debt shall have priority over any or all administrative expenses of the kind specified in §§ 503(b) or 507(b) of the Bankruptcy Code.

d. Pursuant to §§ 364(c)(2), 364(c)(3) of the Bankruptcy Code, as security to the extent of any Postpetition Debt and subject to existing lien rights, Allied is hereby granted valid, binding, enforceable, non-avoidable and perfected liens on and security interests (the "Postpetition Liens") in (i) all currently owned and hereafter acquired assets and/or properties of the Debtor and its estate, including, but not limited to, all of the Debtors its presently existing and hereafter arising, acquired or created Accounts, Chattel Paper, General Intangibles, Supporting Obligations, Equipment, Inventory, Instruments (including promissory notes), Documents, Deposit Accounts, Financial Assets, Securities,

and Letter-of-Credit Rights, certificated vehicles, intellectual property, causes of action, and all amounts owing to Allied under the Factoring Documents, including the Purchase Price and Reserve and all Proceeds thereof and (ii) any and all claims and causes of action arising under state law and chapter 5 of the Bankruptcy Code, including, without limitation, those arising under 11 U.S.C. §§ 510, 544, 547, 548, 549, and 550. Notwithstanding the foregoing, the Debtor is in possession of property owned by its customers, to wit: Henkel Consumer Goods, Inc., Church & Dwight Co., Inc., Method Products PBC (Corporation), Family First Pharmaceutical, Prestige Brands, and 3M Center, all of which property is not an asset and/or property of the Debtor and its estate and is not subject to the Postpetition Liens.

e. Allied is authorized to collect, receive and apply prepetition Accounts and the proceeds thereof, as well as any Accounts and proceeds hereafter arising from the sale of the Debtor's assets to any amounts due to Allied as Allied may elect, whether such indebtedness arose prior to the Debtor Date or subsequent thereto as the result of advances to the Debtor or Allied's purchase of Accounts, pursuant to this Order, provided, however, postpetition Accounts shall only be applied to Postpetition Debt. Allied is further authorized to collect, receive and apply post-petition Accounts and the proceeds thereof to the indebtedness of the Debtor to Allied arising under this Order.

f. The automatic stay imposed by 11 U.S.C. § 362(a) is modified to permit Allied to receive the proceeds of Accounts as authorized in this Order and to file and record UCC financing statements and other instruments and documents as may be necessary to reflect the security interests and liens granted to Allied pursuant to this Order.

g. Allied's willingness to make loans hereunder or purchase Accounts as described in the Factoring Documents shall immediately and automatically terminate and the Postpetition Debt plus all accrued interest thereon shall be immediately due and payable in cash on the earliest of (i) July 8, 2014, unless extended by written agreement of the Debtor and Allied, a copy of which shall be filed with the Court by the Debtor along with a Budget covering the extension period; or (ii) the first day on which an Event of Default (as hereinafter defined) occurs (the "Termination Date").

h. Prior to the making any advances of Postpetition Debt, Allied shall hold an (i) Individual Guaranty and (ii) Guaranty of Validity and Limited Performance executed by Alicia B. Campos and Yasar Samarah, which shall be valid and continuing.

4. Termination of Financing.

a. Unless extended by the Court upon the written agreement of Allied, this Order and Debtor's authorization to incur Postpetition Debt pursuant to this Order will automatically terminate on the Termination Date without further notice or order of the Court. Notwithstanding the foregoing, Allied in its discretion may agree to extend the Termination Date and the Debtor may, upon reaching an agreement concerning such extension, move the Court for an order extending the Termination Date on no less favorable terms to Allied than those contained in this Order, after such notice as may be appropriate under the circumstances.

b. On the Termination Date, at the Allied's election: (1) the Postpetition Debt shall be immediately due and payable; (2) Allied may apply to the Court on one business day's notice for immediate relief from the automatic stay with respect to the Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)) to exercise all rights and remedies available to it under the Factoring Documents, this Order, and applicable nonbankruptcy law with respect to the Collateral; (3) the Debtor shall be authorized and directed to take such actions as Allied may deem necessary from

time to time to assist Allied in the exercise of the rights and remedies available to Allied under the Factoring Documents and applicable nonbankruptcy law with respect to the Prepetition Collateral, including, without limitation, the surrender of such Prepetition Collateral to Allied with Allied paying reasonable costs; and (4) until all of the Postpetition Debt shall have been indefeasibly paid and satisfied in full in cash and without further order of the Court, subject to third party rights, if any, and to Allied being granted relief from the automatic stay, Allied, in its discretion, in connection with a liquidation of any of the Prepetition Collateral, may use any real property, equipment, leases, trademarks, trade names, copyrights, licenses, patents or any other assets of the Debtor which are owned by or subject to a lien of any third party and which are used by the Debtor in its business.

c. On the Termination Date, Allied shall also be entitled (i) to file an emergency motion for (A) conversion or dismissal of the Chapter 11 Case pursuant to 11 U.S.C. § 1112(b), or (B) the appointment of a chapter 11 trustee pursuant to 11 U.S.C. § 1104(a), and (ii) to obtain an expedited hearing on such motion, provided, however, that if the motion is brought pursuant to 11 U.S.C. § 1112(b), such motion shall be brought on no less than seven days (7) days' notice to the parties described in Fed. R. Bankr. P. 2002(a)(4), counsel for the Debtor, counsel for the Committee and the Office of the U.S. Trustee.

5. Adequate Protection of Rights and Interests of Allied. As adequate protection of the rights and interests of Allied during the Financing Period pursuant to the terms and conditions of this Order:

a. Replacement Liens. Subject to paragraph 5.b. below, Allied is hereby granted under §§ 361, 362 and 363 of the Bankruptcy Code, as security to the extent of any diminution in the value of the Prepetition Collateral valid, binding, enforceable, non-avoidable and perfected first priority replacement liens on and security interests in (the "Replacement Liens," and collectively with the Postpetition Liens, the "New Liens") in (i) currently owned and hereafter acquired assets and/or properties of the Debtor and its estate, including property of the estate which may not otherwise be subject to a lien, and (ii) any and all claims and causes of action arising under chapter 5 of the Bankruptcy Code, including, without limitation, those arising under 11 U.S.C. §§ 510, 544, 547, 548, 549, and 550 (collectively, the "Collateral").

b. Treatment of New Liens. The New Liens granted herein shall not be made on parity with, or be subordinated to, any other postpetition lien on or security interest in such Collateral. The New Liens granted pursuant to this Order shall constitute valid and duly perfected security interests and liens, and Allied shall not be required to file or serve financing statements, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtor to execute any documentation relating to the New Liens shall in no way affect the validity, perfection or priority of such New Liens.

c. Reimbursement of Allied's Attorneys Fees and Costs. As additional adequate protection, the Debtor shall reimburse Allied for their reasonable prepetition and postpetition attorneys' fees and costs. A copy of each invoice for which reimbursement is sought by Allied shall be transmitted by Allied's attorneys to the Debtor, the United States Trustee and the Committee. Within five (5) days after receipt of a detailed invoice from Allied's attorneys (the "Initial Payment Date"), the Debtor shall pay the invoice, unless (i) there is a good faith basis for an objection to the request by the Debtor, the United States Trustee or the Committee, (ii) any such objection is not informally resolved prior to the Initial Payment Date, and (iii) any such objection, which shall be in the form of a motion to disallow all or any portion of Allied's attorneys' requested fees and expenses, is filed and served within ten (10) days after the Initial Payment Date passes. The Court shall schedule a hearing on any such motion at the Court's

convenience, but after Allied's attorneys are provided not less than seven (7) days to respond to any such motion.

    d. 506(c) Waiver. The Debtor hereby irrevocably waived, and is barred from asserting or exercising any right to assert a claim against Allied, its claims or any of its collateral under section 506(c) of the Bankruptcy Code or otherwise or to modify or affect any of the rights of Allied under this Order or the Factoring Documents by any order entered in this or any subsequent or superseding case (including, without limitation, any conversion of this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto).

    e. Collateral Access. Allied, together with its agents, representatives, investment and financial advisors, professionals, consultants or designees shall have, at any time during normal business hours, on reasonable request, access to (a) any of the premises that Debtor directly or indirectly owns, leases or otherwise has a right to occupy or use, (b) all assets and properties of the Debtor located on any such premises, including, without limitation, all books and records related to Accounts, inventory or any other Collateral, and (c) any employee, officer, director, agent, representative and consultant of Debtor.

    f. Reporting. The Debtor shall provide Allied on an ongoing basis with all reporting and financial information that the Debtor is obligated to provide Allied pursuant to the terms of the Factoring Agreement and the other Factoring Documents unless the Debtor receives a written waiver of such obligation from Allied. To the extent that Allied requests, the Debtor will also provide Allied with (i) a revised Budget, and (ii) written updates on the Debtor's efforts to sell its assets.

    6. Events of Default. The occurrence of any one or more of the following events shall constitute an event of default ("Event of Default") under this Order: (a) the violation of any of the terms of this Order; (b) the failure to deposit all checks, drafts, cash, notes, money orders, acceptances, other remittances in accordance with the Factoring Documents; (c) the entry of an order converting this case to a case under chapter 7 of the Bankruptcy Code or terminating the authority of the Debtor to conduct its business; (d) any sale by the Debtor of the Collateral other than on the terms and conditions of this Order or other than as provided pursuant to the terms and provisions of the Bankruptcy Code; (e) the termination, expiration, lapse, or reduction of insurance coverage on the Collateral for any reason whatsoever; (f) the failure to pay, when due, any postpetition taxes; (g) any warranty or representation made by the Debtor to Allied, or any financial statement or other documents heretofore or hereafter delivered to Allied, shall prove false or misleading in any material respect; (h) the appointment of a trustee in this case; (i) an Event of Default occurs as provided in the Factoring Documents as modified by this Order; or (j) this Order expires without a Court approved extension.

    7. Miscellaneous Provisions.

    a. Force and Effect of Prepetition Loan Agreement; Conflicts. Other than as provided in this Order, the terms of the Factoring Documents shall govern the terms of the Postpetition Debt.

    b. Validity of Prepetition Indebtedness and Prepetition Liens Notwithstanding anything to the contrary contained in this Order, (i) the Prepetition Indebtedness owing to Allied as of the Petition Date is allowed in full and shall not be subject to any setoff, recoupment, counterclaim, deduction, or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and the Prepetition Liens are legal, valid, perfected, enforceable, and non-avoidable for all purposes, and (ii) Allied (together with its successors and assigns) has no liability with respect to any and all claims and causes of action related to or arising out of the Prepetition Loan Documents, the Prepetition Collateral

and/or the Prepetition Indebtedness owing by the Debtor as of the Petition Date.

   c. Preservation of Lender's Rights. Notwithstanding anything to the contrary herein, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, (a) any of the rights of Allied under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of Allied to (i) request additional adequate protection of its interests in the Prepetition Collateral or relief from or modification of the automatic stay extant under 11 U.S.C. § 362, (ii) request conversion of the Chapter 11 Case to chapter 7, and (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans or (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of Allied.

   8. Binding Effect.

   a. Order. This Order shall be binding on all parties in interest in this Chapter 11 Case, and in any converted or superseding case, and their respective successors and assigns, including any trustee. If this Order never becomes a final and nonappealable order, or if any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this Court or any other court, then such non-finality, termination or subsequent order shall not affect: (a) the priority, validity, enforceability or effectiveness of any lien, security interest, priority, or other benefit authorized hereby with respect or Postpetition Debt advanced prior to the effective date of such subsequent order (and all such liens, security interests, priorities and other benefits shall be governed in all respects by the original provisions of this Order); (b) the stipulations and findings contained in this Order; or (c) the validity, enforceability or effectiveness of the provisions of this Order. Except as otherwise expressly set forth in this Order, no third parties are intended to be or shall be deemed to be third party beneficiaries of this Order.

   b. Notice of Status. A status on this Order is scheduled for July 8, 2014 at 10:30 a.m., at which time the Court will consider the entry of a supplemental order extending the postpetition financing granted by this order. The Debtor is directed to immediately serve a copy of this Order on Allied, its counsel, the Debtor's other secured creditors, counsel to the Committee, and the United States Trustee.

   c. Nothing in this Order shall be construed to require Allied to make any loans or advances to or for the benefit of the Debtor, or to purchase any of the Debtor's Accounts or to make any loan to any subsequently appointed trustee.

   d. This Order shall be effective as of the Petition Date.

   e. All objections to the Motion or relief requested therein that have not been withdrawn, waived or settlement are overruled on the merits.

   e. The Motion is approved and granted as set forth herein.

                                             Enter:

                                             _____
Dated: JUN 17 2014                           United States Bankruptcy Judge

**Prepared by:**
Gregory J. Jordan  (ARDC #6205510)

Rev: 20130104_bko

Mark Zito (ARDC# 6276231)
Jordan & Zito LLC
55 West Monroe St., Suite 3600
Chicago IL 60603
(312) 854-7181 (Telephone)
(312) 276-9285 (Facsimile)
gjordan@jz-llc.com
mzito@jz-llc.com

COUNSEL FOR THE DEBTOR AND DEBTOR IN
POSSESSION

CPC LABORATORIES, INC. - DIP
SUMMARY OF CASH RECEIPTS AND DISBURSEMENTS
FOR THE PERIOD: WEEK 12 - WEEK 15

| | Budget 6/13/14 Week 12 | Budget 6/20/14 Week 13 | Budget 6/27/14 Week 14 | Budget 7/4/14 Week 15 | Total Budget Period Week 12-15 |
|---|---|---|---|---|---|
| **Accounts Receivable** | | | | | |
| Beginning Balance | 1,208,000 | 1,088,400 | 1,147,000 | 1,198,400 | 1,208,000 |
| Add: Sales | 185,000 | 180,000 | 180,000 | 180,000 | 725,000 |
| Less: Collections Existing | (99,000) | - | - | - | (99,000) |
| Less: Collections New Receivables | (202,000) | (125,000) | (125,000) | (125,000) | (577,000) |
| Less: Dilution | (3,600) | 3,600 | (3,600) | (3,600) | (7,200) |
| +/- Adjustments | | | | | - |
| Ending Receivables | 1,088,400 | 1,147,000 | 1,198,400 | 1,249,800 | 1,249,800 |
| | | | | | |
| **Cash** | | | | | |
| Beginning Cash Balance | 592 | | | | 592 |
| Total Cash Receipts 15% week 3,4 collections | | | | | - |
| Total Disbursements | (174,462) | (172,262) | (172,262) | (172,262) | (691,249) |
| Adjustments | | | | | - |
| Loan Advances / (Payments) | 164,900 | 162,350 | 157,250 | 157,250 | 641,750 |
| Ending Cash Balance | (8,970) | (18,883) | (33,895) | (48,907) | (48,907) |
| Change | | | | | |
| | | | | | |
| **Revolver Balance** | | | | | |
| Beginning Loan | 991,465 | 847,715 | 875,715 | 903,715 | 991,465 |
| Pay Downs | (301,000) | (125,000) | (125,000) | (125,000) | (676,000) |
| Advances | 157,250 | 153,000 | 153,000 | 153,000 | 616,250 |
| Additional Advance | | | | | - |
| Adjustments | | | | | - |
| Ending Loan | 847,715 | 875,715 | 903,715 | 931,715 | 931,715 |
| Change | | | | | |
| | | | | | |
| Sales (supported by order backlog) | $ 180,000 | $ 180,000 | $ 180,000 | $ 180,000 | 720,000 |

CPC LABORATORIES, INC. - DIP
SUMMARY OF CASH RECEIPTS AND DISBURSEMENTS
FOR THE PERIOD: WEEK 12 - WEEK 15

| | | Budget 6/13/14 Week 12 | | Budget 6/20/14 Week 13 | | Budget 6/27/14 Week 14 | | Budget 7/4/14 Week 15 | | Total Budget Period Week 12-15 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Manufacturing Expenses** | | | | | | | | | | |
| **S T A F F** | | | | | | | | | | |
| ADP Payroll | $ | 43,000 | $ | 43,000 | $ | 43,000 | $ | 43,000 | | 172,000 |
| Temp Agency Payroll | $ | 38,500 | $ | 38,500 | $ | 38,500 | $ | 38,500 | | 154,000 |
| Payroll Service Fees | $ | 250 | $ | 250 | $ | 250 | $ | 250 | | 1,000 |
| BlueCross BlueShield, Guardian, etc. | $ | 4,500 | $ | 4,500 | $ | 4,500 | $ | 4,500 | | 18,000 |
| Total | $ | 86,250 | $ | 86,250 | $ | 86,250 | $ | 86,250 | $ | 345,000 |
| | | | | | | | | | | |
| **PREMISES** | | | | | | | | | | |
| Rent - Main Building | $ | 11,500 | $ | 11,500 | $ | 11,500 | $ | 11,500 | | 46,000 |
| Rent - Bedford Park | $ | - | $ | - | $ | - | $ | - | | - |
| Pest Control | $ | 350 | $ | 350 | $ | 350 | $ | 350 | | 1,400 |
| ComEd | $ | 4,500 | $ | 4,500 | $ | 4,500 | $ | 4,500 | | 18,000 |
| Peoples Gas | $ | 11,000 | $ | 11,000 | $ | 11,000 | $ | 11,000 | | 44,000 |
| City of Chicago Water | $ | 3,000 | $ | 3,000 | $ | 3,000 | $ | 3,000 | | 12,000 |
| MWRD - Water Reclaim | $ | 677 | $ | 677 | $ | 677 | $ | 677 | | 2,709 |
| Garbage Disposal | $ | 3,400 | $ | 3,400 | $ | 3,400 | $ | 3,400 | | 13,600 |
| Total | $ | 34,427 | $ | 34,427 | $ | 34,427 | $ | 34,427 | $ | 137,709 |
| | | | | | | | | | | |
| **ADMINISTRATIVE** | | | | | | | | | | |
| Greenway Trailers Rent | $ | 3,000 | $ | 3,000 | $ | 3,000 | $ | 3,000 | | 12,000 |
| Communication: Paetec, Sprint | $ | 2,200 | $ | - | $ | - | $ | - | | 2,200 |
| Professional Fees | $ | 1,950 | $ | 1,950 | $ | 1,950 | $ | 1,950 | | 7,800 |
| Allied Fees | $ | 5,000 | $ | 5,000 | $ | 5,000 | $ | 5,000 | | 20,000 |
| Loeb Payment | $ | 8,310 | $ | 8,310 | $ | 8,310 | $ | 8,310 | | 33,240 |
| General Insurance | $ | 4,250 | $ | 4,250 | $ | 4,250 | $ | 4,250 | | 17,000 |
| Data Processing | $ | 500 | $ | 500 | $ | 500 | $ | 500 | | 2,000 |
| Repairs, Maintenance | $ | 3,000 | $ | 3,000 | $ | 3,000 | $ | 3,000 | | 12,000 |
| Lab Supply | $ | 1,125 | $ | 1,125 | $ | 1,125 | $ | 1,125 | | 4,500 |
| Mfg Supplies, Glue, Propane, Diesel | $ | 3,250 | $ | 3,250 | $ | 3,250 | $ | 3,250 | | 13,000 |
| Tape, Pallet Wrap | $ | 3,700 | $ | 3,700 | $ | 3,700 | $ | 3,700 | | 14,800 |
| Office Supply | $ | 500 | $ | 500 | $ | 500 | $ | 500 | | 2,000 |
| Pallets | $ | 7,000 | $ | 7,000 | $ | 7,000 | $ | 7,000 | | 28,000 |
| All Others | $ | 10,000 | $ | 10,000 | $ | 10,000 | $ | 10,000 | | 40,000 |
| Total | $ | 53,785 | $ | 51,585 | $ | 51,585 | $ | 51,585 | $ | 208,540 |

Page 2

CPC LABORATORIES, INC. - DIP
SUMMARY OF CASH RECEIPTS AND DISBURSEMENTS
FOR THE PERIOD: WEEK 12 - WEEK 15

| | Budget 6/13/14 Week 12 | | Budget 6/20/14 Week 13 | | Budget 6/27/14 Week 14 | | Budget 7/4/14 Week 15 | | Total Budget Period Week 12-15 | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Extraordinary Expenses** | | | | | | | | | | |
| Outstanding Payroll | | | | | | | | | | |
| Attorney Fees (Greg's Retainer) | $ | - | $ | - | $ | - | $ | - | | - |
| Attorney, Professional Fees | $ | - | $ | - | $ | - | $ | - | | - |
| Advisor Fees (Rally/Howard Samuels) | $ | - | $ | - | $ | - | $ | - | | - |
| Allied Outside Fees (Philip Waltrip) | $ | - | $ | - | $ | - | $ | - | | - |
| Credit Committee - Legal Fees (Retainer) | $ | - | $ | - | $ | - | $ | - | | - |
| US Trustee Fees | | | | | | | | | | |
| Filing Fees | | | | | | | | | | |
| Landlord Deposit | | | | | | | | | | |
| Utility Deposit- Comed (2 weeks) | | | | | | | | | | |
| Utility Deposit- Gas Company (2 weeks) | | | | | | | | | | |
| Utility Deposit-Water (2 weeks) | | | | | | | | | | |
| **Total Administrative Expenses** | $ | - | $ | - | $ | - | $ | - | $ | - |
| **Total Expenses** | $ | 174,462 | $ | 172,262 | $ | 172,262 | $ | 172,262 | | |
| **Cumulative** | | | $ | 346,725 | $ | 518,987 | $ | 691,249 | $ | 691,249 |
| **Net Profit From Operation without Extraordinary Expenses** | $ | 5,538 | $ | 7,738 | $ | 7,738 | $ | 7,738 | | |
| **Cumulative** | | | $ | 13,275 | $ | 21,013 | $ | 28,751 | $ | 28,751 |
| Cumulative with Extraordinary Expenses | | | | | | | | | $ | 28,751 |

Page 3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 14-09873 |
| CPC LABORATORIES, INC., | ) | Hon. Pamela S. Hollis |
| | ) | |
| Debtor. | ) | |

## ACKNOWLEDGEMENT, CONSENT AND AGREEMENT

The undersigned hereby acknowledge they have reviewed the terms of and acknowledge, consent and agree to the terms of the FINAL ORDER (I) PROVIDING ADEQUATE PROTECTION, (II) AUTHORIZING POSTPETITION FINANCING, (III) GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS, AND (IV) GRANTING RELATED RELIEF presented to the Court on June 17, 2014 and hereby reaffirm their guaranties of the obligations and liabilities owing Allied Affiliated Funding, L.P. by the above-captioned Debtor, including obligations relating to the Postpetition Debt.

_____
B. Alicia Campos

_____
Yasar Samarah